IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

| | |
|---|---|
| ABU KHALID ABDUL-LATIF, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> WARDEN B. BIRKHOLZ, ) <br> FCI LOMPOC,[1] ) <br> ) <br> Respondent. ) <br> ) | Civil Action No. 5:24-cv-224 <br> Judge Bailey |

**RESPONDENT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Respondent, by and through counsel, to respond to the Court's December 10, 2024, Order to Show Cause Why the Petition Should Not Be Granted and files the following Memorandum in Support of Respondent's Motion to Dismiss, or, in the Alternative, for Summary Judgment.

**STATEMENT OF THE CASE**

Petitioner, Abu Khalid Abdul Latif ("Petitioner"), Federal Register Number 40739-086, is a Federal Bureau of Prisons ("BOP") inmate currently designated to the Federal Correctional Institution in Bruceton Mills, West Virginia ("FCI Hazelton"). During the incident giving rise to this Petition, Petitioner was designated to the Federal Correctional Institution in Lompoc, California ("FCI Lompoc I"). While at FCI Lompoc I, Petitioner was sanctioned for violating Prohibited Act Code 110- Refusing a Drug or Alcohol Test, and lost, *inter alia*, 41 days of Good

---

[1] Petitioner is currently designated to the Federal Correctional Institution Hazelton, in Bruceton Mills, West Virginia ("FCI Hazelton"). *See* Find an Inmate, available at https://www.bop.gov/inmateloc/?os=vb.&ref=app (last visited December 26, 2024). Heather Ray serves as the Warden at FCI Hazelton, and would be the proper Respondent for the present habeas corpus Petition.

1

Conduct Time ("GCT"). *See* ECF No. 1-1.  In the instant Petition, Petitioner challenges the disciplinary sanctions, claiming that his due process rights were violated because he was improperly prevented from presenting documentary evidence in his defense and the Discipline Hearing Officer was not an impartial decisionmaker.  *See* ECF No. 1 at 5–6.

Petitioner asks the Court to issue an order restoring his 41 days of GCT. *See* ECF No. 1 at ¶ 15. Petitioner is not entitled to the relief he requests.  First, he failed to exhaust his administrative remedies.  Second, he received all procedural due process protections to which he is entitled.  Third, and finally, the Disciplinary Hearing Officer's decision was supported by sufficient evidence. Therefore, this instant Petition should be denied and dismissed.

## MATERIAL FACTS

**Background**

1. Petitioner is currently serving a 216-month term of imprisonment to be followed by a 10-year term of supervised release for a conviction in the United States District Court for the Western District of Washington for "Conspiracy to Murder Officers and Employees of the United States" and "Conspiracy to Use Weapons of Mass Destruction." Assuming he receives all good conduct time currently projected, he is projected to release from custody on January 24, 2027.  *See Exhibit 1*, Declaration of James McIlrath ("DHO Decl."), at ¶ 4.

2. Presently, Petitioner is designated to FCI Hazelton. *See id.* at ¶ 6.

3. At all times relevant to the instant Petition—from November 9, 2021, to April 4, 2023—Petitioner was designated to FCI Lompoc I. *See id.* at ¶ 5.

**Incident Report No. 3718509**

4. On January 8, at 6:55 a.m., Petitioner was provided one (1) eight-ounce glass of water and advised he had two (2) hours to provide a urine sample. *Id.* at ¶ 8. Petitioner was asked

whether he was ready to provide a sample three (3) separate times. *Id.* Petitioner did not provide a urine sample at any point. *Id.* Petitioner responded to an officer's request for a urine sample by stating "I can't go, I know I'll get an incident report, take me to the hole." *Id.* Petitioner was given a final opportunity to provide a urine sample at 8:55 a.m., at which time he refused. *Id.*

5. Therefore, on January 8, 2023, Petitioner was charged with violating Prohibited Act Code 110 - "Refusing Drug/Alcohol Test." *See id.* at ¶ 7. Petitioner was provided a copy of Incident Report 3718509 on January 8, 2023, at 9:45 a.m. *Id.* at ¶ 9.

6. The charge was heard before the Unit Discipline Committee ("UDC") on January 9, 2023, at 1:09 p.m. *Id.* at ¶ 10.

7. Petitioner attended the UDC hearing where he stated, "I did not refuse to do anything." *Id.* at ¶ 11. Due to the severity of the charge, the UDC referred the matter to the Discipline Hearing Officer ("DHO") and recommended that if Petitioner is found guilty, to sanction him, *inter alia*, with loss of GCT. *Id.* at ¶ 12.

8. Petitioner received notice of the hearing before the DHO following his UDC hearing on January 9, 2023. *See id.* at ¶ 13. At that time, Petitioner indicated that he requested the assistance of a staff representative. *Id.* He indicated that he did not wish to call any witnesses. *Id.*

9. Petitioner also acknowledged that he had read and understood his rights before the Disciplinary Hearing Officer on January 9, 2023, specifically including the right to present documentary evidence on his own behalf. *See id.* at ¶ 14.

3

10. On January 23, 2023, the DHO remanded the incident report to the UDC because the assigned staff representative did not sign the Duties of Staff Representative (Form BP-A0306) in a timely manner. *See id.* at ¶ 15.

11. Accordingly, Petitioner was provided notice of the delay in proceedings on January 24, 2023, and appeared before the UDC again. During this UDC hearing, Petitioner stated: "No Comment." Due to the severity of the charge, the UDC again referred the matter to the DHO and recommended that if Petitioner was found guilty, to sanction him, *inter alia*, with loss of GCT. *Id.* at ¶ 16.

12. Following this UDC hearing, and on the same date, Petitioner received a supplemental notice of hearing before the DHO. *See id.* at ¶ 24. At this time, Petitioner again indicated that he requested the assistance of a staff representative, but did not intend to call witnesses. *Id.* at ¶ 17. On this same date, Petitioner again acknowledged that he had read and understood his rights before the Disciplinary Hearing Officer. *Id.* at ¶ 18.

13. On January 31, 2023, the DHO conducted the discipline hearing for Incident Report No. 3718509. *Id.* at ¶ 19. The DHO was not a victim, witness, investigator, or significantly involved in the underlying incident. *Id.*

14. Petitioner waived his right to a staff representative on the date of the DHO Hearing. *Id.* at ¶ 20.

15. Petitioner's due process rights were read and reviewed at time of the hearing. *Id.* Petitioner stated he understood his rights, and he did not have any documentary evidence to present. He did not request that the DHO review any particular documentary evidence or ask that be given additional time to collect evidence to present. Additionally, Petitioner did not

4

request to call any witnesses, including medical providers, nor did he request to present evidence for the DHO's consideration. *Id.*

16. The DHO read Section 11 of the Incident Report to the Petitioner and asked whether he admitted or denied the charge. Petitioner provided the following statement: "No Contest." *Id.* at ¶ 21. When asked if he wanted to make a further statement, Petitioner stated "I didn't refuse, I just couldn't go in the time period provided." *Id.*

17. Thus, at the hearing, the DHO considered the following evidence: the reporting officer's written statement of the incident; Petitioner's statements to the investigator, Petitioner's statements at the UDC hearings; Petitioner's statement at the DHO Hearing, and the Urine Collection Procedures Chain of Custody form. After considering all the evidence presented, the DHO concluded and found that Petitioner violated Prohibited Act Code 110 – Refusing Drug Testing (UA). *Id.* at ¶¶ 24–28.

18. The DHO's conclusions are contained Section V of the DHO Report. *See id.* at Attachment J, pp. 2–4. In reaching his decision, the DHO relied primarily on the written statement of the reporting officer and Petitioner's admission that he did not provide a sample within the two (2) hour limit. *Id.* at ¶ 26.

19. Additionally, the DHO made permissible adverse inferences from Petitioner's silence at an earlier point in the disciplinary proceedings. *Id.* at ¶ 27.

20. Refusing to provide a urine sample hampers staff's ability to detect and deter the illegal use of narcotics, and for that reason, a refusal is considered the equivalent of testing positive for illicit substances on a urine screen. *Id.* at ¶ 29. Therefore, the DHO sanctioned Petitioner with the disallowance of 41 days of Good Conduct Time, 30 days of disciplinary

segregation (suspended for 90 days), and 180 days loss of visitation, telephone, and commissary privileges. *See id.*

21. A copy of the DHO Report was delivered to Petitioner by the DHO on February 1, 2023. *Id.* at ¶ 30. Petitioner was advised of his right to appeal through the administrative remedy process within 20 calendar days. *Id.*

**Administrative Remedy History**

22. On September 14, 2023, the BOP's Western Regional Office received Administrative Remedy ID Number 1176341-R1, regarding Petitioner's appeal of his January 31, 2023 DHO Hearing. *See Exhibit* 2, Declaration of Misty Shaw ("Shaw Decl.") at ¶ 8a. The Regional Director provided a response for informational purposes on September 21, 2023. *Id.*

23. Approximately nine (9) months later, on June 17, 2024, the BOP's Central Office received Petitioner's Administrative Remedy ID Number 1176341-A1, appealing this DHO Hearing. *Id.* at ¶ 8b. The appeal was rejected on July 1, 2024, because Petitioner failed to provide a copy of his regional administrative remedy request and/or response from the Regional Director with his submission. He was instructed to resubmit his appeal with the proper supporting documentation within 15 days of the date of the rejection. *Id.* at ¶ 8b; *see also* ECF No. 1-1 at p. 19.

24. There is no documentation indicating the Petitioner ever resubmitted his administrative remedy request as instructed. *Id.* at ¶ 9.

## LEGAL STANDARD

"A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way."

*Newsome v. Williams*, No. 3:15CV141, 2016 WL 11431790, at \*2 (N.D. W. Va. May 26, 2016), *report and recommendation adopted Newsome v. Williams*, No. 3:15-CV-141, 2016 WL 4153615 (N.D. W. Va. Aug. 5, 2016) (quoting *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260 (4th Cir. 1998)). Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(d)). However, the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Id.* (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006))).

### A. Motion to Dismiss – Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) raises the fundamental question of whether a court is authorized to adjudicate the claims brought before it. The petitioner bears the burden to prove that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In deciding whether jurisdiction exists, a court is to consider the pleadings are mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Id.* (additional citations omitted). If a court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### B. Motion to Dismiss – Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merit of a claim, or the applicability of defenses."

7

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). A complaint must be more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). This Court need not accept unsupported legal allegations or legal conclusions couched as factual allegations. *See Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *See Ashcroft*, 556 U.S. at 678.

### C. Summary Judgment – Fed. R. Civ. P. 56

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *See Anderson*, 477 U.S. at 248. Summary judgment is appropriate "against any party who fails to make a showing sufficient to establish the existence of an element essential to

8

that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

**A. Petitioner failed to exhaust his administrative remedies prior to filing the instant habeas petition.**

Courts have consistently required prisoners to exhaust administrative remedies prior to filing habeas corpus petitions. The well-established doctrine of exhaustion of administrative remedies requires, in order for an individual to assert claims for judicial relief, he must first exhaust the prescribed administrative remedy made available to him. *See Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). Exhaustion allows for a potentially faster, more efficient solution to the inmate's problem, reduces the intrusion of the courts into prison administration, and provides a mechanism for fact finding before the matter reaches the court. *See McKart*, 395 U.S. at 193–95; *see also Reeder v. Phillips*, 2008 WL 2434003, at *5 (N.D. W. Va. June 12, 2008) (listing seven policies promoted by requiring exhaustion). If an inmate "is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors." *McKart*, 395 U.S. at 195.

Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90. Failure to exhaust administrative remedies is excusable only upon a showing of cause and prejudice. *Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).

BOP has established a four-tiered administrative remedy process. Title 28 C.F.R. § 542.10, *et seq.*, sets forth the BOP's administrative remedy program, which provides formal review of any complaint that relates to any aspect of the inmate's confinement. Under this process, generally,

9

inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of the unit team. *See* 28 C.F.R. § 542.13. If the attempt at informal resolution does not resolve the matter, the inmate may file a formal complaint with the Warden within 20 days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.14. Where an inmate's appeal is related to a disciplinary proceeding, the inmate's appeal should be submitted initially to the Regional Director for the region where the inmate is currently located. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the regional response, he may file an appeal with the National Appeals Administrator at BOP's Central Office in Washington, D.C. *Id.* The Central Office appeal is the final level of administrative review in the Bureau of Prisons' administrative remedy process. *Id.* An inmate is only deemed to have exhausted his administrative remedies when he has filed a complaint at all levels. *Id.*

In this instance, Petitioner did file an administrative remedy regarding the discipline process with the appropriate regional office, he failed to properly appeal to the final level of the process—BOP's Central Office. *See Ex. 2* at ¶¶ 8–9. Petitioner filed Administrative Remedy ID Number 1176341-R1 on September 14, 2023, with the Western Regional Office and received a response in explanation on September 21, 2023. *See Ex. 2* at ¶ 8a. Petitioner filed Administrative Remedy ID Number 1176341-A1 on June 17, 2024, and it was rejected on July 1, 2024, due to a procedural defect. *Id.* at ¶ 8b. Petitioner was provided 15 days to resubmit his appeal to the Central Office with all required documentation and failed to do so. *Id.* Consequently, Petitioner never perfected his appeal through the Central Office, and Petitioner has not exhausted his administrative remedies. *Id.* at ¶¶ 8–9; *Woodford*, 548 U.S. at 90 (Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules).

Petitioner's attempt to argue exhaustion should be excused in his case is unavailing. He

appears to claim that his appeal to the BOP's Central Office was denied because he never received a copy of the Regional Director's October 10, 2023 Response to his appeal. *See* ECF No. 1 at 12C. In support of his argument, Petitioner includes a sworn affidavit to assert he never received the Western Regional Office Response. *Id.* at ECF No. 1-1 p. 16; *but see Ex. 2* at ¶ 8a. Petitioner's dispute as to the Western Regional Office's response does not overcome is failure to properly appeal through the BOP's Central Office.

Ultimately, Petitioner's appeal to the Central Office was never denied; rather, it was rejected for failing to follow the required procedures. *Id.* at ¶ 8b. Petitioner was provided 15 days to correct his procedural defects, he declined to do so. *Id.* at ¶ 9. Notably, Petitioner does not deny that he received the rejection, and in fact, he attaches it to his Petition. *See* ECF No. 1-1 at p. 19. Nor does he provide any evidence that he made requests to his Unit Team to obtain a copy of the Regional Director's October 10, 2023 Response after he was informed that a response had been issued. Thus, Petitioner's Central Office appeal was plainly rejected, he has not exhausted his administrative remedies, and he has not provided sufficient evidence of cause and prejudice to excuse his failure to exhaust.

**B. Petitioner received all due process required by the Supreme Court in *Wolff v. McDonnell*.**

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court outlined what process is due an inmate in inmate disciplinary actions. The procedures mandated by *Wolff* require: (1) written notice of the charges be given to the inmate at least twenty-four hours in advance of his appearance before the prison disciplinary board; (2) prison disciplinary officials to make a written statement as to the evidence relied upon and the reasons for taking any disciplinary action; (3) the inmate be allowed to call witnesses and present documentary evidence at the hearing where such would not be unduly hazardous to institutional safety or correctional goals; (4) the inmate be

11

afforded the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary proceeding involves complex issues; and (5) the decision-maker be impartial. *Id.* at 564–71.

Nearly two (2) years following his DHO Hearing, Petitioner now seeks to collaterally attack his sanctions by alleging he was denied the full protections afforded under *Wolff* because he was denied the opportunity to submit documentary evidence, and the DHO was purportedly biased. *See* ECF No. 1 at ¶¶ 12(A–B). Contrary to Petitioner's baseless claims, he was afforded each and every due process protection to which he is entitled by law.

**1. Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing.**

First, Petitioner received written notice of the charges against him more than 24 hours in advance of his DHO Hearing. Petitioner received Incident Report No. 3718509 on January 8, 2023, at 9:45 a.m. *See Ex. 1* at ¶ 9. Petitioner's discipline hearing on the charges did not take place until January 31, 2023, giving Petitioner well more than 24 hours' notice before hearing. *Id.* at ¶ 19.

**2. Petitioner received a written copy of the DHO Report on February 1, 2023.**

Second, Petitioner received a copy of the DHO Report on February 1, 2023. *See Ex. 1* at ¶ 30 at p. 4. The DHO Report contained the DHO's findings, and the evidence relied upon in reaching the DHO's findings. *Id.* at ¶ 25, and Attachment J at pp. 2–4. The DHO Report set forth the sanctions imposed, as well as the reasons for those sanctions. *Id.* at ¶ 29. Finally, the Petitioner was advised of his right to appeal the DHO Report within 20 calendar days both at the DHO Hearing and in the DHO Report. *Id.* at ¶ 30.

**3. Petitioner was afforded the opportunity to present documentary evidence on his own behalf and to call witnesses, but waived those rights at the hearing.**

Third, Petitioner appears to claim that he was prevented from submitting documentary evidence on his behalf at the hearing regarding his medication because he was in the Special Housing Unit, and therefore did not have access to any documentation from his property. *See* ECF No. 1 at ¶ 12(A). He also submitted two documents that he purportedly would have presented at the hearing: a one-page Bureau of Prisons Health Services Medical Duty Status form generated on March 3, 2023, and a two-page medication information sheet for Levetiracetam Tablets (issued on February 7, 2024). *See* ECF No. 1-1 at pp. 21, 23–24.

First, Petitioner's argument is a red herring. The Court should note that both documents Petitioner now claims he would have presented to the DHO were generated well after his DHO Hearing date of January 31, 2023. *Compare Ex. 1* at 19 (DHO Hearing date of January 31, 2023 *with* ECF 1-1 at p. 21 (Medical Duty Status dated March 3, 2023) and ECF 1-1 at pp. 23–24 (Information Sheet issued Feb. 7, 2024). Any alleged inability to access his documents cannot relate to documents which were not in existence at the time of the January 31, 2023 DHO Hearing.

More importantly, however, Petitioner offers no credible evidence that he was not afforded the right to present documentary evidence at the time of the DHO Hearing. Petitioner possessed ample time and opportunity to collect and present evidence between his notice of the charged offense on January 8, 2023, and his DHO Hearing on January 31, 2023. It is the inmate's responsibility to present his documentary evidence at a DHO hearing:

> Third, despite the petitioner's contentions to the contrary, he was **given an opportunity to call witnesses and to present documentary evidence. This Court finds that he simply failed to do so.** On May 23, 2006, the petitioner was provided with a Notice of Discipline Hearing Before the DHO. **On that form is a statement informing the petitioner of the right to call witnesses and present documentary evidence.** . . .
>
> The petitioner argues that he was denied the right to call witnesses and present documentary evidence by the DHO's failure to provide

13

> him with certain documents which he claims he requested at a meeting with the DHO on May 26, 2006. **According to the petitioner, he informed the DHO orally of the documents he needed and offered specific explanation of how these documents related to his defense.** He also claims that the DHO agreed to comply with his request. Nothing in the record supports the petitioner's assertion, however. **In any case, the petitioner had ample time to identify witnesses and collect relevant documents between first learning of the charge in the incident report on May 18, 2006, and the date of the disciplinary hearing on May 31, 2006. However, as the magistrate judge noted, the petitioner waited until two days before the hearing to submit a list of evidence** he wanted to present. On these facts, this Court concludes **that the petitioner was not denied the right to call any witnesses or present any evidence.** Accordingly, the third *Wolff* requirement is satisfied.

*Teoume-Lessane v. Bolyard*, No. 5:07CV159, 2008 WL 4283522, at *4 (N.D. W. Va. Sept. 17, 2008), aff'd, 329 F. App'x 389 (4th Cir. 2009) (Stamp, F.) (emphasis added).

Here, Petitioner acknowledged his right to present documentary evidence on two separate occasions prior to the DHO Hearing—once on January 9, 2023, and once on January 24, 2023. *See Ex. 1* at ¶¶ 14, 18. Petitioner was again advised of his right to present documentary evidence at the outset of his DHO Hearing on January 31, 2023. *Id.* at ¶ 20. At no time did Petitioner indicate that he had documentary evidence to present, present any documentary evidence, request the DHO independently review any documentary evidence, nor request additional time to collect documents. *See generally id.* at Attachment J. Likewise, Petitioner was advised on three occasions of his right to call witnesses. *See Ex. 1* at ¶¶ 14, 18, and 19. On two separate Notice of Discipline Hearing Before the (DHO) forms, Petitioner confirmed he did not wish to call witnesses. *See id.* at ¶ 13, 17. On the day of his DHO Hearing, he again declined the opportunity to call any witnesses *Id.* at 20. In fact, the Petitioner was silent as to any medical condition or any other defense to the alleged conduct during his DHO Hearing. *See Ex. 1* at Attachment J. Thus, Petitioner was fully aware of his right to present documentary evidence and declined to do so; he instead plead "No Contest" to

14

the Code 110 offense. *Id.* at 21. Thus, there is no evidence in the record that Petitioner was denied an opportunity to present documentary evidence, and his Petition must be dismissed. *Teoume-Lessane*, 2008 WL 4283522, at \*4 (Petitioner had ample time to identify witnesses and collect documents between first learning of charge in the incident report and the disciplinary hearing).

    **4.**  **Petitioner voluntarily waived the assistance of a staff representative.**

Fourth, Petitioner has offered no evidence that he is illiterate or the disciplinary proceedings involved complex issues. Accordingly, the BOP was not required to offer him the assistance of a staff representative. *See Wolff*, 418 U.S. 564–71. Nevertheless, Petitioner was also offered, and ultimately, voluntarily waived, the assistance of a staff representative at the hearing. *Id.* at ¶ 20.

    **5.**  **Petitioner provides no competent evidence that the DHO was improperly biased.**

Finally, Petitioner argues the DHO was not impartial. Specifically, he alleges the DHO demonstrated prejudice when he "'gave great weight' to [Petitioner's] statement at the unit disciplinary committee hearing where [Petitioner] was quoted as saying 'No Comment.'" *See* ECF No. 1 at ¶ 12(B). Petitioner's argument misapplies the impartiality standard attached to DHO hearings.

The guarantee of an impartial decisionmaker is primarily focused on ensuring the reviewing DHO did not serve as a victim, witness, investigator, or any other significant role in the underling incident:

> The fourth protection afforded by Wolff is that the inmate be provided with an impartial fact-finder. 418 U.S. at 571. According to the Inmate Discipline Program, "[t]he DHO will be **an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.**" 28 C.F.R. § 541 .8(b) (2011). [The] DHO [] did not act in any role other than the DHO during the investigation or hearing pertaining to the

15

> petitioner's charges []. In addition, in a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, [the] DHO [] stated that he "was not predisposed to finding [the petitioner] guilty" and "acted as an objective and impartial decision-maker" []. The DHO also declared that "[he] considered the evidence before [him] and based [his] findings on the evidence at hand" [Id.]. As such, [the] DHO [] was an impartial fact-finder and the petitioner was afforded the fourth protection under Wolff.

*Bos. v. Perdue*, No. 2:12-CV-75, 2013 WL 1503165, at *7 (N.D. W. Va. Apr. 11, 2013) (emphasis added) (Bailey, J.). Here, Petitioner points to zero evidence to suggest the DHO was a victim, witness, investigator, or participated in any other significant role in the underlying incident. *See generally* ECF No. 1 at ¶ 12(B). Nor do any of the disciplinary records show that the DHO was involved at any point of the disciplinary process prior to the DHO Hearing. *See Ex. 1* at Attachments C, G, and J. Additionally, the DHO stated in a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, that he was not predisposed to finding the Petitioner guilty and acted as an objective and impartial decisionmaker. *See Ex. 1* at ¶ 23. To that end, the DHO considered the evidence before him and based his findings on the evidence at hand. *Id.*

Moreover, to the extent the Petitioner's argument suggests a negative inference attached to remaining silent in UDC proceedings is inconsistent with impartiality, Petitioner is again mistaken. It is well-established that during the inmate disciplinary process, an inmate "may remain silent at all stages of the discipline process, **but that [his] silence may be used to draw an adverse inference against [him] at any stage of the process.** [His] silence alone, however, cannot be the basis for finding [he] committed the prohibited act(s)." 28 C.F.R. § 541.5 (emphasis added). While the DHO made an adverse inference based on Petitioner's "No Comment" during UDC proceedings, he did not rely solely on Petitioner's silence. *Ex. 1* at ¶ 27. To wit, the DHO also relied upon the investigating officer's account, and the Petitioner's own statement that he did not provide a urine sample. *Id.* at ¶ 25. Thus, there is no merit to Petitioner's adverse inference

16

argument, the DHO was an impartial factfinder, and Petitioner was afforded due process the under this particular protection.

Based on all the foregoing, Petitioner was afforded all five *Wolff* protections, and Petitioner's Petition must be denied.

### C. The DHO properly relied upon "some evidence" in finding guilt.

The Supreme Court has held that the "requirements of [substantive] due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Massachusetts, Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985). The Court in *Hill* explained:

> **This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced…"** Ascertaining whether this standard is satisfied **does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.** Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455–56 (emphasis added; internal citations omitted). "The decision of the DHO is entitled to deference by a reviewing court." *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (citing *Hill*, 472 U.S. at 455–56). "Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact." *Brewer v. Earwin*, No. 22-CV-489-LKG, 2023 WL 1109662, at *10 (D. Md. Jan. 30, 2023) (citing *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980)). DHO findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *Id*. (citing *Hill*, 472 U.S. at 456; *Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990)). "[T]he 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet." *Tyler v. Hooks*, 945 F. 3d 159, 171 (4th Cir. 2019).

Here, Petitioner does not directly argue that insufficient evidence supports the DHO's finding, and on that basis alone, Petitioner's Petition must be dismissed. *See Hill*, 472 U.S. at 455–56 (the court should not entertain an independent assessment of witness and weighing evidence; rather, the relevant question is whether "any evidence" supports the DHO's decision). However, to the extent this Court liberally construes the Petition[2] as a challenge to the sufficiency of the evidence, such challenge fails.

In this instance, the DHO clearly stated the evidence he relied upon in reaching his conclusion that Petitioner had committed the prohibited act. The DHO relied on the written statement of the reporting officer along with Petitioner's own statement admitting he could not provide a sample within the two (2) hour limit. *Ex. 1* at ¶ 26. While the DHO also made permissible adverse inferences based on Petitioner's failure to offer any statements in his own defense during the underlying investigative and UDC proceedings, Petitioner's silence alone was plainly not the sole basis for the DHO's conclusion. *See Ex. 1* at ¶ 27. Indeed, Petitioner has admitted receiving eight (8) ounces of water at the outset of the two (2) hour period, *id.* at ¶ 8; and furthermore, admitted he was unable to provide a urine sample within the two (2) hour limit. *Id.* at ¶¶ 8, 11, and 21. Ultimately, the failure or inability to produce a sample within the two (2) hour limit is considered a refusal to provide a sample:

> If an inmate is unwilling to provide a urine sample within two hours of a request for it, staff must file an incident report. No waiting period or extra time need be allowed for an inmate who directly and specifically refuses to provide a urine sample. To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished. To assist the inmate in giving the sample, staff shall offer the inmate eight ounces of water at the beginning of the two-hour time period. An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within

---

[2] *See e.g.,* ECF No. 1 at ¶ 12(A) (" . . . I informed them that I take a medication called 'Levitaracetam' [sic] that can make it hard to provide a urine sample in 2 hours . . . .").

18

> the allotted time period. An inmate may rebut this presumption during the disciplinary process.

BOP Program Statement 6060.08, <u>Urine Surveillance and Narcotic Identification</u>, *available at* https://www.bop.gov/policy/progstat/6060_008.pdf (last visited Dec. 30, 2024). Petitioner's failure to produce a sample is tantamount to refusing to provide a urine sample, and the DHO's conclusions are plainly based on "some evidence." Petitioner's present arguments soliciting the Court to re-examine and weigh the evidence are exactly the type of intrusion into the disciplinary process which was excluded by the Supreme Court in *Hill*.

The discipline records are clear that the DHO relied upon more than "some evidence" to conclude that Petitioner had committed the prohibited act and, therefore, Petitioner's Petition must be denied and dismissed.

## **CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Petition be dismissed.

> WILLIAM IHLENFELD
> UNITED STATES ATTORNEY.
>
> By: */s/ Jordan V. Palmer*
> Assistant United States Attorney
> W. Va. Bar # 12899
> United States Attorney's Office
> P.O. Box 591
> 1125 Chapline Street, Suite 3000
> Wheeling, WV 26003
> (304) 234-0100
> (304) 234-0110 fax
> Jordan.Palmer@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

| | |
|---|---|
| **ABU KHALID ABDUL-LATIF,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **Civil Action No. 5:24-cv-224** |
| v. ) | **Judge Bailey** |
| ) | |
| **WARDEN B. BIRKHOLZ,** ) | |
| **FCI LOMPOC,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of **RESPONDENT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court by using the CM/ECF system on the 7th day of January, 2025, which will provide a copy to all counsel of record. The foregoing document has been furnished for delivery via first-class mail to the following non-CM/ECF participant:

Abu Khalid Abdul-Latif
40739-086
HAZELTON FCI
Inmate Mail
P O BOX 5000
BRUCETON MILLS, WV 26525

WILLIAM IHLENFELD
UNITED STATES ATTORNEY.

By: */s/ Jordan V. Palmer*
Assistant United States Attorney
W. Va. Bar # 12899
United States Attorney's Office